# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATHENS-LIMESTONE HOSPITAL ) <br> 700 West Market Street ) <br> Athens, AL 35611 ) <br> ) <br> BON SECOURS SAINT FRANCIS HOSPITAL ) <br> 2095 Henry Tecklenburg Drive ) <br> Charleston, SC 29414 ) <br> ) <br> DALLAS COUNTY HOSPITAL DISTRICT ) <br> 5200 Harry Hines Boulevard ) <br> Dallas, TX 75235 ) <br> ) <br> HELEN KELLER HOSPITAL ) <br> 1300 South Montgomery Avenue ) <br> Sheffield, AL 35660 ) <br> ) <br> LAKELAND MEDICAL CENTER, SAINT JOSEPH ) <br> 1234 Napier Avenue ) <br> St. Joseph, MI 49085 ) <br> ) <br> LENOX HILL HOSPITAL ) <br> 100 East 77th Street ) <br> New York, NY 10075 ) <br> ) <br> LONG ISLAND JEWISH MEDICAL CENTER ) <br> 270-05 76th Avenue ) <br> New Hyde Park, NY 11040 ) <br> ) <br> MARSHALL MEDICAL CENTER SOUTH ) <br> 2505 US Highway 431 ) <br> Boaz, AL 35957 ) <br> ) <br> NORTH SHORE UNIVERSITY HOSPITAL ) <br> 300 Community Drive ) <br> Manhasset, NY 11030 ) <br> ) <br> PHELPS MEMORIAL HOSPITAL CENTER ) <br> 701 North Broadway ) <br> Sleepy Hollow, NY 10591 ) <br> ) <br> SCHNECK MEDICAL CENTER ) <br> 411 West Tipton Street ) <br> Seymour, IN 47274 ) | Case No. _____ <br><br> **COMPLAINT** |

| | |
|---|---|
| SOUTHSIDE HOSPITAL<br>301 East Main Street<br>Bay Shore, NY 11706 | )<br>)<br>) |
| SPECTRUM HEALTH UNITED HOSPITAL<br>615 South Bower Street<br>Greenville, MI 48838 | )<br>)<br>) |
| STATEN ISLAND UNIVERSITY HOSPITAL<br>475 Seaview Avenue<br>Staten Island, NY 10305 | )<br>)<br>) |
| UMASS MEMORIAL HEALTHALLIANCE –<br>CLINTON HOSPITAL – LEOMINSTER CAMPUS<br>60 Hospital Road<br>Leominster, MA 01453 | )<br>)<br>)<br>) |
| UMASS MEMORIAL MARLBOROUGH HOSPITAL<br>157 Union Street<br>Marlborough, MA 01752 | )<br>)<br>) |
| UMASS MEMORIAL MEDICAL CENTER –<br>UNIVERSITY CAMPUS<br>55 Lake Avenue North<br>Worcester, MA 01655 | )<br>)<br>)<br>) |
| UNIVERSITY OF ILLINOIS MEDICAL CENTER<br>1740 West Taylor Street<br>Chicago, IL 606012 | )<br>)<br>) |
|     Plaintiffs, | ) |
|     vs. | ) |
| ALEX M. AZAR II<br>Secretary of the United States Department of Health<br>and Human Services<br>Room 700-E<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | )<br>)<br>)<br>)<br>)<br>) |
|     Defendant. | ) |

2

## COMPLAINT

The above-captioned 18 Plaintiff hospitals ("Plaintiffs" or "Hospitals"), by and through their undersigned counsel, bring this action against Alex M. Azar II, in his official capacity as the Secretary of the Department of Health and Human Services, and allege the following:

## NATURE OF ACTION

1. Plaintiffs bring this action under the Social Security Act, 42 U.S.C. §§ 1395, *et seq.* (the "Medicare Act") and the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* (the "APA") to challenge provisions of final rules issued on November 1, 2017, November 1, 2018, and November 1, 2019, by the Centers for Medicare and Medicaid Services ("CMS"). *See* 82 Fed. Reg. 52,356, 52,493–511, 52,622–25 (Nov. 13, 2017); 83 Fed. Reg. 58,818, 58,981 (Nov. 21, 2018) and 84 Fed. Reg. 61,142, 61,317–27 (Nov. 12, 2019). The final rules concern the Hospital Outpatient Prospective Payment System ("OPPS") and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs for Calendar Years ("CYs") 2018, 2019 and 2020. The portions of the challenged rules reduced by nearly 30% Medicare reimbursements to certain public and not-for-profit hospitals and clinics for prescription drugs purchased by those institutions on a discounted basis under section 340B of the Public Health Service Act (the "340B Program"). The Secretary, in exceeding his scope of authority under the Medicare Act and by reducing reimbursement payment for drugs purchased under the 340B Program, unlawfully infringed on the Plaintiffs' efforts to care for low-income and vulnerable patients, in contravention of Congress's intent in enacting the 340B Program. The challenged rules took effect on January 1, 2018, and January 1, 2019. The 2020 Rule will take effect on January 1, 2020, and it expands the covered entities subject to the reduction to include non-excepted off-campus provider-based departments.

2. Congress enacted the 340B Program in 1992 and through the Program lowered the cost of drugs purchased by certain public and not-for-profit hospitals and federally funded clinics serving large numbers of low-income patients. By lowering hospitals' purchase costs for patient drugs, Congress enabled these hospitals to "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384(II), at 12 (1992). *See also* 82 Fed. Reg. at 52,493 & n.18 (quoting House report and noting that "[t]he statutory intent of the 340B Program is to maximize scarce Federal resources as much as possible, reaching more eligible patients").

3. Commencing January 1, 2018, CMS began reimbursing covered outpatient drugs and biologicals acquired through the 340B Program at average sales price (ASP) minus 22.5% when billed by a hospital paid under the OPPS. CMS continued this payment policy in CY 2019, and finalized in the CY 2020 OPPS Rule the decision to continue this payment policy and to extend it to non-excepted off-campus provider-based departments.

4. As explained in comments to the CY 2018 OPPS Rule, *see* 82 Fed. Reg. at 52,499–502, and in the lawsuits that followed its passage and application, the establishment of this improper rate exceeds the Secretary's authority, *see Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 79-83 (D.D.C. 2018)("*AHA I*") and *Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1 (D.D.C. 2019)("*AHA II*")(holding that the Secretary exceeded his authority when he reduced the 2018 and 2019 Medicare reimbursement rate for pharmaceutical drugs covered by the "340B Program" by nearly 30%.), *consolidated appeal docketed*, Nos. 19-5048 and 19-5198 (D.C. Cir. July 16, 2019).

5. In accordance with this Court's decisions in *AHA I* and *AHA II*, Plaintiffs bring this action to seek relief from the Secretary's prior actions and to secure injunctive relief from the 2020 OPPS Rule.

6. As noted above and as discussed in this Court's decisions in *AHA I* and *AHA II*, the 340B Program has lowered the cost of drugs purchased by certain public and not-for-profit hospitals and federally funded clinics serving large numbers of low-income patients. In so doing, Congress enabled these hospitals to "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384(II), at 12 (1992). The 340B Provisions of the 2018, 2019 and 2020 OPPS Rules specially target the Medicare portion of this benefit of the Program for 340B hospitals that serve the poor. The 2018, 2019 and 2020 OPPS Rules eliminate nearly all of the differential between national Medicare reimbursement rates and the discounted purchase costs mandated for 340B hospitals, costing those hospitals an estimated $3.2 billion, in violation of both the Secretary's statutory authority under the Social Security Act to reimburse hospitals for outpatient drugs and the purpose and design of the Public Health Service Act provisions establishing the 340B Program.

7. Plaintiffs have used the 340B Program to provide critical health care services to their communities. Those hospitals and their poor and underserved patient populations have suffered, and will continue to suffer, harm from the negation of the cost-reimbursement differential through the 340B Provisions of the 2018, 2019 and 2020 OPPS Rules.

8. Plaintiffs are entitled to declaratory and injunctive relief, including a preliminary injunction setting aside the 340B Provisions of the 2020 OPPS Rule pending resolution of this action.

**PARTIES**

9. At all times relevant to this Complaint, Plaintiffs were qualified as Medicare-participating providers under the Medicare Act and have participated in the 340B Program.

10. Plaintiffs participate in the 340B Program and rely heavily on the price differential created by Congress through that Program to generate resources that are used to provide critical

5

health care programs to the vulnerable populations they serve. Plaintiffs have been significantly harmed by the elimination of this differential from Medicare payments in the 2018 and 2019 OPPS Rules and will continue to be significantly harmed if those Rules, including the 2020 OPPS Rule, remain in effect.

11. The 340B Provisions of the 2018, 2019 and 2020 OPPS Rules severely threaten Plaintiffs' ability to provide critical health care programs to their communities, including the underserved populations in those communities, by depriving Plaintiffs of millions of dollars of savings previously generated from the differential between Medicare reimbursements and 340B discounts.

12. Defendant Alex M. Azar II ("the Secretary") is the Secretary of the Department of Health and Human Services, the federal department which encompasses CMS. The Secretary, the federal official responsible for the administration of the Medicare Program, has delegated to CMS the responsibility to administer that program. Secretary Azar is sued in his official capacity.

## JURISDICTION AND VENUE

13. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq.*, section 340B of the Public Health Services Act, 42 U.S.C. § 256b, and the Administrative Procedure Act, 5 U.S.C. §§ 701–06.

14. This Court has subject matter jurisdiction over this action under 42 U.S.C. § 405 and 28 U.S.C. § 1331.

15. This judicial district is an appropriate venue pursuant to 28 U.S.C. § 1391(e), 42 U.S.C. § 405(g), and 42 U.S.C. § 1395ff(b)(2)(C)(iii).

## STATUTORY AND REGULATORY BACKGROUND

**A.   The 340B Program**

16.     Congress established the 340B Program in 1992 as part of the Public Health Service Act. The 340B Program provides certain hospitals serving a disproportionate share of low-income individuals and federally-funded clinics (called "covered entities" in the statute) with outpatient prescription drug discounts comparable to those that Congress had made available to state Medicaid agencies in 1990. Under the 340B Program, private prescription drug manufacturers, as a condition of having their outpatient drugs be reimbursable through state Medicaid programs, are required to offer covered entities discounts calculated pursuant to a statutory formula. 42 U.S.C. § 256b(a)(1). The purpose of the Program is to enable eligible public and not-for-profit hospitals and other covered institutions to use their scarce resources to reach more patients, and to provide more comprehensive services.

17.     Since the 340B Program was first implemented, covered entities have retained all savings generated through the program and have used those savings to provide additional critical health care services for their communities, including underserved populations within those communities. Those critical health care services include the provision of patient education programs, translation services, transportation services and increased service locations.

18.     Recognizing the value of the 340B Program, Congress has increased the categories of eligible "covered entities." In 1992, when Congress first created the Program, "covered entities" included federally-funded health centers and clinics providing services such as family planning, AIDS intervention, and hemophilia treatment, as well as public and certain not-for-profit hospitals serving a large proportion of low-income populations. *See* 42 U.S.C. §§ 256b(a)(4)(A)-(E), (G), (L). In 2010, as a part of the Affordable Care Act, Congress expanded "covered entities" to include certain children's hospitals, free-standing cancer hospitals, critical access hospitals, and

7

sole community hospitals. *See* 42 U.S.C. § 256b(a)(4)(M)-(O). Pursuant to the 2020 OPPS Rule, "covered entities" also include non-excepted off-campus provider-based departments. *See* 84 Fed. Reg. at 61,181.

19. Plaintiffs are "covered entities" under the 340B Program and are paid under the OPPS system.

**B.   Medicare OPPS Reimbursement**

20. In 1997, Congress sought to control Medicare expenditures for outpatient services and directed CMS to develop a hospital Outpatient Prospective Payment System ("OPPS") for Medicare to pay for services offered by hospitals' outpatient departments. *See* 42 U.S.C. § 1395*l*. CMS updates the OPPS payment rates annually.

21. Beginning in 2004, Congress directed CMS to set reimbursement rates for separately payable drugs, *i.e.*, covered outpatient drugs that are not bundled into the price of an outpatient service. These drugs include outpatient drugs covered under the 340B Program.

22. The statute provides two avenues to CMS for setting Medicare reimbursement rates for separately payable drugs in 2006 and subsequent years. Under Subclause I of the statute, CMS must set rates based on the acquisition costs of these drugs, if specified statistically sound survey data on acquisition costs are available for each drug. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). Under Subclause II, if the specified acquisition costs data are not available, CMS is required to reimburse based on average sales price ("ASP")—a defined quantity under a different statutory provision—plus 6%. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II).

23. In 2012, after concluding that it could not obtain the acquisition cost required in order to reimburse under Subclause I based on acquisition cost, CMS adopted the reimbursement method under Subclause II—the statutory default rate of ASP plus 6%—for all separately payable

drugs. This statutory default rate was applied without further adjustments for each subsequent year, until January 1, 2018.

C.  **CMS's Reduction to Payment Rate for 340B Drugs**

24. On July 13, 2017, CMS issued its proposed rule on OPPS and Ambulatory Surgical Center payment systems for the CY 2018. In addition to updating the OPPS with 2018 rates, CMS proposed to change how Medicare pays certain hospitals for separately payable drugs purchased under the 340B Program. 82 Fed. Reg. 33,558, 33,634 (July 20, 2017). Specifically, it proposed to lower the Medicare reimbursement rate for such drugs from the previous rate of ASP plus 6% to ASP minus 22.5%—a reduction in the reimbursement rate of 28.5%. *Id.* at 33,634.

25. On November 13, 2017, CMS issued the final version of the 340B Provisions of the 2018 OPPS rule, adopting the proposed rate of ASP minus 22.5% for drugs purchased under the 340B Program. 82 Fed. Reg. at 52,362.

26. This new reimbursement rate nearly eliminated the benefit of the 340B Program for certain covered entities by eliminating the difference between the purchase price paid *by* hospitals for those drugs and Medicare payments *to* hospitals for those drugs.

27. For its authority to reduce the reimbursement rate for certain 340B drugs by nearly 30%, CMS purported to rely on 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II), which allows the Secretary to "calculate" and "adjust" the statutory default rate of ASP plus 6%. *See, e.g.*, 82 Fed. Reg. at 52,499 (noting that "calculate and adjust" authority gives the Secretary "broad discretion" to adjust payments for drugs). The 340B Provisions of the 2018 OPPS Rule exceed the Secretary's authority because the reduction set forth in the Rule is expressly based on the estimated acquisition costs of 340B drugs, *i.e.*, a variation of the cost-based methodology set forth under Subclause I of the applicable statutory provision, 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). *See, e.g.,* 82 Fed. Reg. at 52,501. Because CMS, by its own admission, cannot now and has never been able to reliably

9

collect the statistically significant cost data for each drug required under the statute to invoke Subclause I, it improperly sought to use *aggregate* acquisition costs as estimated by the Medicare Payment Advisory Commission ("MedPAC") as a proxy for that data in issuing the OPPS Rule – even though payment under Subclause II expressly must be based on average sales price, *not* acquisition costs. In doing so, the Secretary impermissibly invoked his authority under Subclause II to circumvent the requirements under Subclause I.

28.  The Secretary's authority under Subclause II of the applicable statutory provision, 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II), to "calculate" and "adjust" the ASP-plus-6% formula, does not allow CMS to reduce the statutory rate by nearly 30%, depriving affected hospitals of drug-price savings totaling an estimated $1.6 billion (CMS's estimate). Rather, this authority only permits the Secretary to calculate the ASP as set forth in the statute and to fine-tune the default rate.

29.  The 340B Provisions of the 2018 OPPS Rule also exceed the Secretary's authority because they undermine the 340B Program by depriving eligible hospitals of a critical portion of the resources Congress intended to provide those hospitals through 340B discounts. Elimination of these resources has and will continue to put public and not-for-profit covered entities into even more precarious financial situations, curtailing their ability to provide essential health care services and programs to their communities, including underserved populations within those communities. This is inconsistent with the intent of the 340B Program, which was designed to help covered entities stretch scarce federal resources to reach more eligible patients. CMS's efforts in the 340B Provisions of the 2018 OPPS Rule to "align" (82 Fed. Reg. at 52,495) the purchase price of 340B drugs with reimbursements for those drugs is directly contrary to Congress' intent to create a

differential between reimbursements and purchase prices and thereby to generate resources for covered entities to use in their communities.

30. The new payment rate set forth in the 340B Provisions of the 2018 and 2019 OPPS Rules have substantially impacted the day-to-day operations of many covered entities, including Plaintiffs. These Hospitals rely on the 340B savings, and the price differential Congress created through that program, to provide vital health services to their communities, including vulnerable and underserved populations within those communities. Elimination of the differential in connection with Medicare payments for 340B drugs have and will continue to threaten many of these critical programs, in direct contravention of the purpose and design of the 340B Program.

31. On November 12, 2019, CMS issued the 2020 OPPS Rule, which "continues the 340B Program polies that were implemented in CY 2018 with the exception of the way we are calculating payment for 340B-acquired biosimilars . . . and continues the policy we finalized in CY 2019 to pay ASP minus 22.5 percent for 340B-acquired drugs and biologicals furnished in nonexcepted off campus [Provider Based Departments] paid under the [Physician Fee Schedule]." 84 Fed. Reg. at 61,325.

## ADMINISTRATIVE REVIEW OF PLAINTIFFS' CLAIMS FOR PAYMENT

32. After a health care provider performs Medicare-eligible services, it submits a claim for reimbursement to a Medicare Administrative Contractor ("MAC"). The MAC makes an initial determination whether to pay the claim, and if so, how much to pay. *See* 42 C.F.R. § 405.920. If the MAC denies a claim for payment in whole or in part, the Social Security Act provides a four-level administrative appeal process. First, the provider may present its claim again to the MAC for "redetermination." *See* 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. § 405.940. Second, the provider may seek "reconsideration" from a Qualified Independent Contractor ("QIC"). *See* 42 U.S.C. § 1395ff(c); 42 C.F.R. § 405.960. Third, the provider may seek *de novo* review by an

administrative law judge in the Office of Medicare Hearings and Appeals. *See* 42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1000–58. If, however, an appeal turns on a question of law or regulation and does not present any material disputes of fact, then after or simultaneous with requesting third-level review by an administrative law judge, a provider may ask the Departmental Appeals Board to certify the appeal for expedited access to judicial review. *See* 42 U.S.C. § 1395ff(b)(1)(A), (b)(2); 42 C.F.R. § 405.990. Fourth, the provider may seek *de novo* review by the Medicare Appeals Council, which is a part of the HHS Departmental Appeals Board. *See* 42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 1100.

33. If HHS's final decision after this process is unfavorable, a provider may seek judicial review. *See* 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 1136.

**A.     Plaintiffs Presented Claims in Compliance with this Court's Decision in *AHA v. Azar***

34. Beginning in early 2018, Plaintiffs presented claims for payment to their respective MACs for separately payable drugs subject to the 340B Program.

35. Consistent with the payment reduction in the 340B Provisions of the 2018 and 2019 OPPS Rules, the MACs' payments on Plaintiffs' claims were approximately 30% less than what they had paid Plaintiffs on identical claims in 2017.

36. Following receipt of the MACs' initial determinations, Plaintiffs submitted redetermination requests to their MACs, challenging the reimbursement. On their redetermination request forms, Plaintiffs contended that "the payment(s) received for 340B drugs reflect a new reimbursement of Average Sales Price (ASP) minus 22.5%," and that the new reimbursement rate violates 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II), the authority to pay for this drug, because it: (1) is not an "adjustment" to the statutory default rate (ASP+6%); (2) is based on acquisition cost, when reliable data on acquisition cost is concededly unavailable; and (3) is for the explicit purpose of significantly reducing benefits provided by the statutorily-created 340B program.

37. The MACs have issued unfavorable decisions on Plaintiffs' redetermination requests, stating in their notice of redetermination that the amount they had already paid was "the maximum payment allowed by Medicare" for the services at issue.

38. Plaintiffs timely filed their second level of appeal, submitting reconsideration requests regarding their claims to their respective Qualified Independent Contractors ("QICs"). In their reconsideration requests, Plaintiffs presented the same argument that they had raised in their redetermination requests to their MAC.

39. The QICs either dismissed or denied Plaintiffs' reconsideration requests.

40. In late 2018, Plaintiffs' MACs posted notices on their respective websites that all 340B Program claims appeals would be dismissed on the grounds that 42 U.S.C. § 1395w-4(i)(1) prohibits administrative and judicial review of these periodic adjustments.

**B.    Notices Issued To Plaintiffs Expressly Disclaimed Any Right to Appeal**

41. Plaintiffs sought to exercise and exhaust their administrative rights by adhering to the Secretary's appeal process. At each level of appeal, however, Plaintiffs' bases for review were rejected.

42. Additionally, Plaintiffs MACs issued and posted notices expressly disclaiming Plaintiffs' appeal rights, stating:

> **340B Acquired Drugs and Appeals**
>
> In accordance with Medicare's national payment policy an administrative review is not available for applicable drugs acquired under the 340B drug program that are reimbursed under the Outpatient Prospective Payment System (OPPS).

*WPS Appeals, Guides and Resources*.  Available at: https://www.wpsgha.com/wps/portal/mac/site/appeals/guides-and-resources/340b-acquired-drugs-appeals/ (last accessed January 27, 2020)

> *Appeals*
>
> Providers and beneficiaries have the right to appeal claim determinations made by NGS. The purpose of the appeals process is to ensure correct adjudication of claims. . . .
>
> If the drug was not reimbursed by Medicare and you believe the drug should have been covered, you should consider filing an appeal. However, when a service is reimbursed in accordance with Medicare's National payment policy for 340B-acquired drugs, the amount paid is final. The method of reimbursement is not an appropriate reason for an appeal and an appeal will not be considered when submitted to dispute CMS' 340B national payment policy.

*National Government Services News and Alerts 340B-Acquired Drugs: Medicare Reimbursement and Appeals*. Available at: https://www.ngsmedicare.com/ngs/portal/ngsmedicare/newngs/home-lob/news-alerts/news-articles/news-detail/340b-acquired%20drugs%20medicare%20reimbursement%20and%20appeals (last accessed January 27, 2020)

43. Other MACs, including Noridian, CGS, Novitas, and Palmetto, also informed Plaintiffs that they have no appeal rights, advising that all redetermination requests would be dismissed.

44. All Plaintiffs have presented specific claims for payment to the Secretary's agents and appealed the agents' initial determinations. All appeals have been dismissed and/or denied. Accordingly, any further administrative review would be futile because (a) no adjudicator within CMS has authority to invalidate a CMS regulation, and (b) CMS and its agents have taken the position that there is no administrative review of 340B Program reimbursement disputes.

45. Furthermore, on December 27, 2018, this Court concluded, in the context of reimbursement requests for CY 2018, that the Secretary exceeded his statutory authority by adjusting the Medicare payment rates for drugs acquired under the 340B Program to ASP minus 22 percent for that year. *See Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62 (D.D.C. 2018)(declaring rate reduction *ultra vires* and, therefore, not subject to the Medicare statute's preclusion on

review). Recognizing the "havoc that piecemeal review of OPPS payment could bring about," the district court ordered supplemental briefing on the appropriate remedy. *Id.*

46. On May 6, 2019, after receiving the parties' briefing on the remedy, the court issued an opinion which reiterated that the 2018 rate reduction exceeded the Secretary's authority, and declared that the rate reduction for 2019—which had been finalized since the district court's initial order was entered—also exceeded his authority. *See Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 6-10 (D.D.C. 2019). The matter was thereafter remanded to HHS to devise an appropriate remedy. *Id.* at 10-15.

47. On July 10, 2019, following review of the Secretary's motion for reconsideration, the District Court entered judgment for the plaintiffs and relinquished jurisdiction to facilitate the appeal. *See Am. Hosp. Ass'n v. Azar*, No. 18-cv-2084, unpublished slip op. at 3-5 (D.D.C. July 10, 2019), available at 2019 WL 3037306. The consolidated appeal (docketed as USCA Case Nos. 19-5048 and 19-5198) is pending before the D.C. Circuit on an expedited calendar.

48. Notwithstanding its stated intent to take steps necessary to adhere to the District Court's ruling on CY 2018 and CY 2019 340B rates, the Agency finalized in the CY 2020 OPPS rule the decision to continue this payment policy and, further, to extend its application to non-excepted off-campus provider-based departments. The CY 2020 provisions, like those in CY 2018 and CY 2019, unlawfully exceed the Secretary's authority. The continued reimbursement rate for 340B drugs violates 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II), the authority to pay for 340B and other covered outpatient drugs, because it: (1) is not an "adjustment" to the statutory default rate (ASP+6%); (2) is based on acquisition cost, when reliable date on such cost is concededly unavailable; and (3) is for the explicit purpose of significantly reducing benefits provided by the statutorily created 340B Program.

15

## CAUSES OF ACTION

### COUNT I:
### 2018 OPPS Rule – Violation of the Social Security Act

49. Plaintiffs repeat and reallege paragraphs 1–48 as if set forth fully herein.

50. The Social Security Act and the APA require this Court to hold unlawful and set aside any decision of the Secretary that is arbitrary and capricious or contrary to law. 42 U.S.C. §§ 405(g), 1395ii; 5 U.S.C. § 706(2).

51. The nearly 30% reduction in payment for 340B drugs under the 2018 OPPS Rule is arbitrary and capricious and contrary to law, and in excess of the Secretary's authority under the Medicare provisions of the Social Security Act, 42 U.S.C. § 1395*l*(t)(14)(A)(iii).

### COUNT II:
### 2019 OPPS Rule – Violation of the Social Security Act

52. Plaintiffs repeat and reallege paragraphs 1–51 as if set forth fully herein.

53. The Social Security Act and the APA require this Court to hold unlawful and set aside any decision of the Secretary that is arbitrary and capricious or contrary to law. 42 U.S.C. §§ 405(g), 1395ii; 5 U.S.C. § 706(2).

54. The 2019 OPPS Rule, which carried forward the nearly 30% reduction in payment for 340B drugs that was implemented in the 2018 OPPS Rule, is arbitrary and capricious and contrary to law, and in excess of the Secretary's authority under the Medicare provisions of the Social Security Act, 42 U.S.C. § 1395*l*(t)(14)(A)(iii).

### COUNT III:
### 2020 OPPS Rule – Violation of the Social Security Act

55. Plaintiffs repeat and reallege paragraphs 1–54 as if set forth fully herein.

56. The Social Security Act and the APA require this Court to hold unlawful and set aside any decision of the Secretary that is arbitrary and capricious or contrary to law. 42 U.S.C. §§ 405(g), 1395ii; 5 U.S.C. § 706(2).

57. The 2020 OPPS Rule, which carries forward the nearly 30% reduction in payment for 340B drugs that was implemented in the 2018 OPPS Rule, is arbitrary and capricious and contrary to law, and in excess of the Secretary's authority under the Medicare provisions of the Social Security Act, 42 U.S.C. § 1395*l*(t)(14)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court issue judgment in their favor and against Defendant:

A. Declaring that the 340B Provisions of the 2018, 2019 and 2020 OPPS Rules are an unlawful exercise of Defendant's authority, in violation of the Social Security Act and section 340B of the Public Health Service Act;

B. Directing Defendant to strike the changes in the payment methodology for section 340B drugs from the 2018, 2019 and 2020 OPPS Rules and directing Defendant to use the methodology used in calendar year 2017 for all 340B Program payments for claims reflecting service dates in 2018, 2019 and 2020;

C. Directing Defendant to reimburse all Plaintiffs for the difference between amounts paid for 340B drugs pursuant to the 2018, 2019 and 2020 OPPS Rules and what would have been paid for those same drugs under the methodology used in calendar year 2017;

D. Directing Defendant to conform the payment methodology that they use for 340B drugs in 2020 and subsequent years to the requirements of the Social Security Act,

          and specifically not to use acquisition costs to calculate prices unless Defendant have complied with 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I);

E.     Granting Plaintiffs' statutory interest, costs and attorney fees in accordance with 42 U.S.C. § 1395*oo*(f)(2); and

F.     Granting such other relief to which Plaintiffs may be entitled at law or in equity.

Dated this 28th day of January, 2020.

                                                  Respectfully Submitted,

                                                  /s/ Sara Jean MacCarthy
                                                Sara Jean MacCarthy, D.C. Bar No. WI0037
                                                Daniel F. Miller, D.C. Bar No. WI0032
                                                Heather D. Mogden, D.C. Bar No. WI0039
                                                HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
                                                330 East Kilbourn Avenue, Suite 1250
                                                Milwaukee, WI 53202
                                                Telephone: (414) 721-0442
                                                Facsimile: (414) 721-0491
                                                Email: smaccarthy@hallrender.com
                                                Email: dmiller@hallrender.com
                                                Email: hmogden@hallrender.com

                                                *Attorneys for Plaintiffs*